IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TAMARA E. HILL** | : | **Civil No. 1:17-CV-508** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA, et** | : | |
| **al.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court is Defendant Westinghouse Electric Corporation's motion for summary judgment. (Doc. 74.) For the reasons set forth below, the motion will be granted.

## I.   BACKGROUND

This wrongful death action arises from claims by Plaintiff Tamara Hill that Defendant Westinghouse defectively designed a 1500 kVA transformer that was in operation at a military installation in Franklin County, Pennsylvania from 1984 until approximately 2015. (*See* Doc. 16.) The amended complaint alleges that in September 2015, Plaintiff's husband, Michael S. Hill, was injured and later died from his injuries following an arc flash electrical incident that occurred while he was working near the transformer. (*See id.* ¶¶ 27–34.)

The transformer at issue was built by Westinghouse in 1983–1984 as the central component of an interconnected array, or "line-up," of Westinghouse electrical equipment for the U.S. Department of the Army's Raven Rock Mountain

Complex, known as "Site R", in Fairfield, Pennsylvania. (Doc. 76 ¶¶ 16–17, 21, 44; Doc. 79 ¶ 78.) In addition to the transformer, the line-up of Westinghouse equipment included a high-voltage switch, current-carrying metal bus duct, and low voltage switchgear with circuit breakers, which were provided to the USA as part of its design of a secure underground electrical substation located in its 7th Signal Corps Computer facility. (Doc. 76 ¶¶ 16, 19). The USA sought to ensure a secure and continuous "uninterrupted power supply" ("UPS") to Site R with a redundant "double-ended" configuration of equipment in the underground substation known as the "UPS Substation." (*Id.* ¶¶ 18, 19.) It thus ordered from Westinghouse two line-ups for the UPS Substation, which included identical or essentially identical transformers, high voltage switch, low voltage switchgear, and bus ducts. (*Id.* ¶ 19.) The double-ended substation design allowed one line-up to continue delivering power to Site R when the other was shut down for any reason, thereby avoiding a power loss that might jeopardize Site R's operations. Under normal conditions, however, both line-ups remained in operation together. (*Id.* ¶ 20; Doc. 77-2 ¶ 78.)

In 1984, the transformer was shipped to Site R, where it was installed by a contractor in the UPS Substation. (*Id.* ¶ 21.) Upon installation, the transformer sat on a concrete pad that was ten feet long and six inches thick, without bolts or anything else securing it to the ground or pad. (*See id.* ¶ 28; Doc. 77-3 p. 108.) The transformer remained in operation, in its original location, until shortly after the

September 2015 accident, when it was removed along with its sister transformer. (*See id*. ¶¶ 48, 57, 58; Doc. 77-2 ¶¶ 76, 79; Doc. 79 ¶¶ 76, 79.)

Westinghouse has filed a motion for summary judgment, which argues that it is entitled to dismissal under Pennsylvania's statute of repose. (Doc. 74.) The motion has been fully briefed and is ripe for disposition.

## II. <u>STANDARD OF REVIEW</u>

Rule 56(a) of the Federal Rules of Civil Procedure directs that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving

party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

### III.   <u>DISCUSSION</u>

Westinghouse's motion argues that it is entitled to summary judgment because Plaintiff's claims are barred by Pennsylvania's statute of repose. Under the statute of repose, any civil action brought against a person performing or furnishing the design, planning, supervision, or observation of construction, or construction of

any improvement to real property, "must be commenced within 12 years of completion of construction of such improvement," in order to recover damages for deficiency in the design or construction of the improvement, or for injury "to the person or for wrongful death arising out of any such deficiency." 42 Pa.C.S.A. § 5536(a)(1), (a)(3). The party seeking protection under the statute of repose must demonstrate: "(1) what is supplied is an improvement to real property; (2) more than twelve years have elapsed between the completion of the improvements to the real estate and the injury; and (3) the activity of the moving party must be within the class which is protected by the statute." *Noll by Noll v. Harrisburg Area YMCA*, 537 Pa. 274, 280 (Pa. 1994) (citations omitted).

Here, Westinghouse satisfies the first factor for the statute of repose because its motion demonstrates that the transformer supplied to Site R was an improvement to real property. An improvement to real property is a valuable addition that is "more than mere repairs or replacement" and is "intended to enhance its value, beauty or utility or to adapt it for new or further purposes . . ." *McCormick v. Columbus Conveyer Co.,* 522 Pa. 520, 524 (1989) (citation omitted); *see Noll*, 537 Pa. at 286–87 ("An improvement includes everything that permanently enhances the value of real property."). In determining whether a chattel or article of personalty is an improvement to real property for purposes of the statute of repose, the court considers three main factors: "(1) the relative permanence of attachment to realty;

(2) the extent to which the chattel is necessary or essential to the use of the realty; and (3) the intention of the parties to make a permanent addition to the realty." *Noll*, 537 Pa. at 286–87 (citations omitted). The court must consider the intention of the parties in installing the chattel, as manifested by their objective conduct, and take into consideration factors that may include the degree to which and manner in which the object is attached to real property, the ease of removing the object, whether the object may be removed without damaging the real property, the length of time for which the object has been attached to the property, and whether the conduct of the parties evidences an intention to permanently attach the object to the property. *Id.* at 287–89.

The transformer was attached to Site R through electrical conduits and bolts to adjacent electrical equipment in the line-up for more than three decades. It was bolted at its flange to an adjacent voltage switch in the line-up, and also secured with bolts to the bus duct, which served as a conduit to accommodate electrical cables and connections between the high voltage switch and the high voltage leads of the transformer. (*See* Doc. 76 ¶ 24; Doc. 76-9 ¶¶ 46, 47; Doc. 77-3 pp. 84, 108.) Bolts and tie plates were also used to run electrical connection to the low voltage leads of the transformer, and one or more electric conduits also ran from the ceiling and connected to the transformer at the bus duct. (*See* Doc. 76 ¶ 47; Doc. 76-9 ¶¶ 48, 49; Doc. 77-2 ¶ 47.) While the transformer was not, by design, bolted or otherwise

connected to the floor or walls of Site R, it weighed more than 7,000 pounds and stood over seven feet tall; and it remained secure and in the same place, operating and with its connections attached, for more than thirty years. *See McCormick*, 522 Pa. at 522 (finding that the belt conveyor of a coal delivery system became incorporated into plant and was an improvement to property); *Kephart v. ABB, Inc., No.* 12-CV-668, 2015 WL 1245825, at *6 (W.D. Pa. Mar. 18, 2015) (finding that components of a boiler system that were "interconnected with each other and with the prison itself through pipes, ducts, and wires . . . [d]emonstrate that the boiler system cannot be moved and is an integrated part of the real property").

Further supporting the transformer's status as a fixture and improvement to real property is the central role that it played, for over three decades, in providing continuous power supply to Site R and critical assets of the United States government. (*See* Doc 76 ¶ 56.) *See Kephart*, 2015 WL 1245825, at *5–6 ("[T]he boiler system is necessary and essential to the use of the prison. The boiler system provides steam for the prison, which was designed to house about 1500 inmates. The steam generated by the boilers serves three basic functions at the prison—for laundry, for use in the kitchen, and for hot water heat exchangers, which provide heat for the facility and the domestic hot water supply."); *Beaver v. Dansk Industri Syndicat A/S (DISA)*, 838 F. Supp. 206, 211 (E.D. Pa. 1993) (finding that a molding machine in an iron foundry was a fixture for purposes of the statute of repose in part

because it was relied upon "as an integral part of the foundry production for the past 25 years"); *McCormick*, 522 Pa. at 522 (finding that a coal delivery system that provided heat and hot water to university tenants was a fixture subject to the statute of repose). While it is true that the transformer could be shut down at any time without disrupting the power to Site R, it was nevertheless essential to ensuring the uninterrupted flow of electricity to the facility. Much like a plane engine, the transformer and its sister transformer normally operated at half power, but each was capable of working at full power when the other was down for some reason, and both were therefore necessary to providing continuous power to the substation. (*See* Doc. 76 ¶¶ 16–20; Doc. 77-2 ¶ 78.)

The record also shows that the parties objectively demonstrated an intent to make the transformer a permanent addition to the realty, confirming its status as an improvement to real property. The transformer remained in operation, with its connections secure and without being moved, for more than thirty years; and notably, since the transformer normally operated at only half power, it was expected to last even longer than that. (*See* Doc. 76 ¶ 58.) *See A.M. by & through Forgione v. Landscape Structures, Inc.*, No. 14-CV-1376, 2017 WL 2215276, at *8 (M.D. Pa. May 19, 2017) ("Landscape and Hamilton Heights intended the PlayBooster and its Track Ride to become a permanent addition to Hamilton Heights' playground site, as is evidenced by the fact that the structures have not been moved or reconfigured

since their installation in 1988."); *see also Kephart*, 2015 WL 1245825, at *5–6 (W.D. Pa. Mar. 18, 2015) (finding that the parties objectively intended for a boiler system interconnected with the prison's utilities to become of its real property); *Beaver*, 838 F. Supp. at 211 (E.D. Pa. 1993) ("The parties intended to annex the molding machine as part of the structure of the foundry . . . [T]he machine has never been moved or disassembled since it was installed in 1968 at the foundry."); *Schmoyer by Schmoyer v. Mexico Forge, Inc*., 621 A.2d 692, 694 (1993) (finding that the parties objectively intended for playground equipment installed and left in place for seventeen years to become permanent improvement to property), *rev'd on other grounds*, 538 Pa. 1 (1994). And while the parties dispute the ease with which the transformer could be removed, which it eventually was shortly after the arc flash accident, its weight of more than two tons makes it clear that relatively heavy machinery and elaborate electrical work would have been required to accomplish the task. Given the transformer's long-term attachment to the property, its necessity to the use of the site, and the parties' objective manifestation of an intent to make the transformer a permanent addition to the realty, there is no issue of material fact that the transformer was a fixture and improvement to real property, satisfying the first factor under the statute of repose.

Finally, Westinghouse's motion demonstrates that it falls within a class that is protected by the statute because there is no dispute of material fact that it provided

9

individualized expertise to the USA in connection with its design of the transformer, satisfying the third factor under the statute of repose. The record is clear that multiple Westinghouse engineers worked to design the transformer according to the USA's specifications. (Doc. 76 ¶ 32.)  The materials and components were selected to meet the USA's particular needs, and Westinghouse made a number of unique design modifications to tailor the transformer to the requirements of Site R, including adjusting or relocating the low voltage bus duct connection to the top to permit electric wires to attach from the top (*id*. ¶ 38; Doc. 77-2 ¶ 38); modifying the depth of the transformer case from 60 inches to 57 inches to help fit the dimensions of the UPS Substation (Doc. 76 ¶ 37); and modifying the orientation of the transformer from a high voltage left, low voltage right orientation to a low voltage left, high voltage right orientation (*id*. ¶ 39). By designing and furnishing a customized transformer according to the USA's unique specifications, Westinghouse acted as more than a simple manufacturer of mass goods and thus fell within a class entitled to protection under the statute of repose. *See Noll*, 537 Pa. at 284 ("Even if Sta–Rite did no more than examine the drawings and determine that its standard product was appropriate with modifications, as appears was the case in the instant situation, Sta–Rite expended 'individual expertise' and was involved with the design of the alleged improvement."); *Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 395 (2011) (finding that the trial court properly granted summary judgment under statute of repose where

the plaintiff "can point to no evidence in the record to suggest that [the defendant] played no role in the design and construction of the turbines at issue").

In sum, Westinghouse's motion demonstrates that the transformer was a fixture and improvement to real property, and that its role in designing and furnishing the transformer brought it within a class that is entitled to protection under the statute of repose. And because there is no dispute that more than twelve years have elapsed between the transformer's installation and Mr. Hill's injury, Westinghouse satisfies each of the three elements of the statute of repose and is entitled to summary judgment on all Plaintiff's claims.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant Westinghouse Electric Corporation's motion for summary judgment will be granted. An appropriate order shall follow.


Dated: March 3, 2022

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge
